Council for the next case, let me ask Mr. Janich, is that correct? Yes, Janich. Janich, how much time would you like, you have 10 minutes, how much time would you like for rebuttal? Two minutes. Okay, go ahead please. Thank you. May it please the court, my name is Eitan Castle-Janich, I'm representing Jason Reeve in this appeal. He has been unable to work since March 2015 due to the combined functional effects of his many physical and mental impairments, including degenerative disc disease, radiculopathy, peripheral neuropathy, GERD, mood disorder, anxiety disorder, and acute kidney injury. His claim has been appealed to court twice. The first time the district court remanded his claim for a new hearing, and after an ALJ denied his claim again, on his second court appeal, the district court affirmed the ALJ's decision, which is why we are here today. Reeve was 43 when he applied for disability benefits, and he is now 51. His date last insured is December 31st of 2020, so he must prove that he was disabled at least as far back as that date. The ALJ correctly found that, he found that Reeve used to work as an electronics technician, a construction worker, and an installer, and he concluded that he could not perform any of those jobs. The ALJ improperly rejected the opinion evidence, which shows that Reeve's limitations prevent him from performing any other type of work as well. ALJ's main errors here involve his, well, his treatment of the medical opinion evidence. The three most important... Can I ask you a question? Please. The one inconsistency that I find most troubling is about the construction management degree. When Mr. Reeve was asked whether he had received any education since high school during his hearing, and he denied it, but then he told a provider that he was, you know, trying to get a construction management degree, and then he was hoping that that could help him get a job that would involve back pain. So I guess my concern is, I guess, threefold. One, you know, the ALJ can use that, can use ordinary techniques of credibility evaluation and other testimony to conclude that someone is being less than candid, that the relevant falsehoods made in the context of a disability hearing can support an ALJ's decision to discount a claimant's symptom testimony. So if you could just address that concern and whether what the ALJ said is enough to be a specific, clear, and convincing reason for discounting Mr. Reeve's testimony. Your Honor, I did not represent Mr. Reeve in the administrative appeal process. But what I see, the problem I see with that is that the ALJ at the hearing did not question, fully question Mr. Reeve about exactly about this discrepancy and clarify, was this a treatment out describing the past? Was it describing his aspirations? Was it describing something he was actively spending time doing? There's just not clarity on that. And to be honest with you, when I prepared my opening brief, both in district court and for this court, and noticed and studied that particular issue, that is the reason that throughout this case, we have been requesting remand for a new hearing and not the award of benefits. But for that piece of evidence, which I agree is at best unclear as far as it does not seem to support his overall testimony. It seems very much contrary to all of the evidence here. But it still troubled me enough that I felt like that was something that needed to be addressed by an ALJ at a hearing where he would have an opportunity to answer questions about it. But with regard to the medical evidence, and that gets back to the medical evidence, which is the medical evidence is clear. Can I just confirm that, I'm sorry to interrupt you. Please. Can I confirm that you said that that statement would undermine his other symptom testimony, right? Trouble concentrating, driving and going places, having to recline. I mean, it could potentially undermine a lot of the symptom testimony. That potentially, I'm sorry. I'm sorry, I was trying to listen. And I thought you said that you thought that it could potentially undermine a lot of the symptom testimony, if it's true. No, see, when you say it could potentially, if it were true, if it were accurate, yes, it could potentially undermine some of that. Okay, so are you saying that he did not tell his orthopedist in December of 2020 that he was attending school working on a construction management degree? You're saying that statement to his orthopedist was not true? No, what I'm saying is that we don't know exactly what that meant. We don't know if that meant that he had some online thing that he was looking at and starting on and trying to do from his home. We don't know any detail on it because at his hearing, nobody asked him. To me, it's not a clear enough piece of evidence to undermine everything else in the entire file, including his other testimony. In fact, it's contradictory to the majority of the evidence here. But I realize because of the uncertainty involved in it, that is, I think, because in terms of the type of relief we're requesting, if the court has serious doubt about some of the evidence in the file, if it's a lack of clarity, if there's some contradiction such as this, an award of benefits is not appropriate. Because other than that evidence, an award of benefits is appropriate. Counsel, can I ask you a question? So the objective medical evidence, there's no dispute he has degenerative spinal stenosis, which is expected to cause many of the symptoms at issue. There's only a dispute about degree of whether his subjective testimony about the severity of his symptoms is credible. But putting that aside, let's assume for the moment that that subjective testimony was properly discounted. There's still the objective medical evidence and the opinions of both his treating physician and his examining physician, Dr. Kim and Dr. Liu, finding based on objective medical evidence and clinical observations, not his subjective testimony, that he has a range of functional limitations that, if credited, would render him disabled. Is that correct? That is correct. That's why the evidence here is very strong regarding the medical evidence. And there is this, yes, but I agree with you. That's absolutely correct. And I believe we have case law that says if a physician's medical opinion is based primarily on objective medical evidence and clinical observations and only partially based on self-reports, it doesn't matter. Even if the subjective testimony is discredited, the opinions still need to be credited, unless the ALJ explains exactly why the opinions were weighted more on subjective reporting than on clinical observations and objective evidence. I'm thinking of we have many cases to that effect. That's true. Buck is one of them. Can you also look at on ER 26 and 27, the ALJ seems to think there's some objective medical evidence that also would be inconsistent with that could potentially constitute substantial evidence to support the ALJ's decision. Do you want to address that? Well, I'm looking at 11. A record fails to document significant objective findings and treatment. And it just begins on the last paragraph of ER 26 through the first paragraph of ER 27. Okay. So with regard to that, first of all, one of the mistakes made by the ALJ, and he based his mistake on both medical expert testimony, which was mistaken. It was contrary to medical practice, and it was contrary to Social Security law, which was that the range of motion limitations and sensation limitations were subjective, not objective. That completely undermines the ALJ's reliance on the medical expert's testimony, because he didn't consider any of the range of motion limitations or any of the sensation limitations, which are well-documented, subjective evidence that's throughout the file. And back to what you were saying, I'm sorry, I've lost train of the issue that you were addressing. I'm sorry. Could you repeat that for me? It's okay. I was just asking whether this would be objective medical evidence. Even if we affirm the ALJ's discounting of subjective symptom testimony, that would not be a basis to affirm Dr. Liu's and Dr. Kim's opinions, which are based on clinical observations and objective medical evidence. Well, let me jump to one other issue, and just one other person, which is Ms. Hiller. She is a physical therapist who did a two-and-a-half-hour evaluation, and she's also found that her findings supported that he could not perform full-time work. We have two physicians and a physical therapist who all opine that he could not perform full-time work, and there are not objective findings in the medical evidence. Oh, the treatment. You asked about the treatment and the treatment records. The most important thing to keep in mind in that is towards the end of a month before his date last insured, he went to an orthopedic surgeon, Dr. Minista. Dr. Minista recommended back surgery, and the ALJ does not even mention this evidence, completely ignores it. The only reason the surgery couldn't take place is he ended up being hospitalized for other problems, and they had to delay it. But that was right before the date last insured. It's evidence the ALJ ignored, and that's right there as clear error as flow. What about Dr. Thompson's testimony to the contrary? Once again, by Dr. Thompson saying that range-of-motion findings from a trained physician and sensation findings from a trained physician are not objective evidence, fully undermined his, quote-unquote, expert opinion. That's not a qualified expert if he's getting something that basic completely wrong, and that's why his testimony merits no weight at all. Thank you. I've used up my time. You've gone over a minute and 30 seconds, but we will give you some time for rebuttal. Thank you. All right. Opposing counsel, go ahead, please. Good morning, Your Honors. May it please the Court. Sarah Mohm on behalf of the Commissioner of the Social Security Administration. Since we're just dealing with that issue of whether the range-of-motion and sensory testing was objective or subjective medical evidence, can you please address the Regulation 20 CFR Section 404-1529-C2, which says expressly evidence of reduced joint motion and sensory deficit or motor disruption are objective medical evidence? Sure. So, as that regulation says, objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, including range-of-motion sensory testing, et cetera. Dr. Thompson, when he testified at the hearing, did not say that range-of-motion testing and sensory testing is not objective medical evidence as categorized by the regulations. Instead, he simply acknowledged that the results of those tests do contain a subjective component because they are reliant upon the patient's response. So, for example, when doing sensory testing, the result of the sensory test is dependent in part upon the patient saying, I do or do not feel that. Range-of-motion testing is dependent in part upon the patient saying, Ouch, I can't move my joint any further or continuing to move the joint. But that still does not mean that the ALJ can properly reject the results of that testing as subjective medical evidence. I mean, that seems to be that would completely conflict with the agency's own regulation. I mean, what would be the point of the regulation is express the state that these types of tests are objective medical evidence. If the ALJ could just turn around and say, because they're partly dependent on a subjective response, I can turn objective medical evidence into subjective medical evidence and dismiss it. I understand, yes. In this case, we don't have a situation where the ALJ is categorically dismissing all objective evidence that contains a subjective opponent simply because it contains a subjective component. What we have here is a combination of factors. We have, first, that the objective findings throughout the record are contradictory. So, for example, on examination with Dr. Liu, we presented and said that he had sensory deficits in every single extremity. On range of motion testing, he wouldn't move his hips at all because he said it was extremely painful. But those findings are not replicated throughout the record. Throughout the record, he has some normal sensory findings. He has some normal sensory findings on the left and positive findings on the right. He has normal range of motion findings of all joints. In fact, in 2015, he had a completely normal pre-employment physical examination with completely normal range of motion testing, normal strength. So, the first factor that we have here is that we have inconsistent objective results throughout the record. And under Coleman... The pre-employment test is that the one you're talking about from several years earlier? That was from the pre-employment examination was from April 2015. You can find that at page 333. That was one year before Dr. Liu's test. Didn't the prior district court judge already say, you know, this is a degenerative disease and you can't rely on tests from 2015 to discredit tests from 2020? Well, Dr. Liu's exam was in 2016. So, just one year after the pre-employment and examination. And it is true that in the prior decision, the district court said that it is a degenerative disease. But at that time, there wasn't the new record information that we have here, which conclude the new MRI imaging showing that there wasn't significant degeneration. And including the longitudinal record showing that the findings from the 2016 examination with Dr. Liu were an anomaly that were not replicated before or after. So, you pair those inconsistent objective examination findings throughout the record and then you combine that with the fact that the ALJ provided numerous valid reasons to conclude that Reeve's subjective testimony is not reliable. And then you compound that with the medical expert testimony from Dr. Thompson. And in this case, there is a lot of good reasons to conclude that the subjective components of those objective tests rendered the findings unreliable. When you say that Dr. Liu's findings were not replicated before or after, can you point me to exactly inconsistent similar examination? So, in 2019, there was an orthopedic examination with fully normal sensation and range of motion findings. That's at page 964. In 2020, he again had normal sensory testing. That's at page 948. And then, as I cited, there's that 2015 pre-employment examination. That's at 333. With completely normal range of motion findings. In fact, a completely normal examination. No findings at all. Normal strength, normal range of motion, etc. Sorry, what was the last site that you gave me? What page? That's at 333. Dr. Thompson, though, was not either the treating physician or an examining physician, was he? He was simply reviewing the records. Now, is it clear why the ALJ can't just readily credit a reviewing physician's testimony to overturn the treating and examining physician's, Annie? Well, I don't think that the... You're right. The ALJ cannot just prefer one physician's opinion over another without any reasons. The ALJ has to give specific and legitimate reasons to discount the opinions of Dr. Liu and Dr. Kim. But I would argue that the ALJ didn't just say Dr. Thompson said otherwise, and so I reject these opinions. Instead, the ALJ pointed to the fact that Dr. Liu's findings were inconsistent with the longitudinal record. Under Coleman, that's a good reason to discount the subjective symptom complaints. But we also have Dr. Kim, who was his treating physician for many years, saying it is consistent with his clinical observations and the objective medical evidence. Presumably looking at the same record. And then we have a treating physician who's actually personally observed Mr. Liu over many years. Multiple times. Right. But when you look at Dr. Kim's opinion, let me just pull it up. It's at 434 to 435. It's a pretty short opinion, just a couple sentences. And he says that yes, he agrees with Dr. Liu's clinical observations and review, and then says yes. Specifically, it says, are the limitations noted above by Dr. Liu consistent with your clinical observations and review of objective testing? So it's pretty clearly, it may be short, but he's being asked, Dr. Kim's being asked to base, to say whether he agrees or not based on his own clinical observations and review of objective testing. And there's no dispute, he's been treating and seeing Mr. Liu for many years. Correct. I think at that time it had been maybe one and a half. But yes, he had been treating the patient. He had been treating Mr. Liu. Let me ask. Go ahead. You can finish your response. I was just going to say, when you get down to the bottom of it, it's evident that he is reliant upon Reeve's reports about the frequency and severity of his back pain. He doesn't cite any of his own specific clinical findings that would support the limitations. And instead, what he points to is Reeve's reports about the frequency and severity of his back pain. He does that for the absenteeism issue, which he adds as a limitation. But as far as the other functional limitations listed in question one, it's just, I mean, by its own terms, based on his own clinical observations and review of objective testing. He doesn't say, correct that. You're right. He circles a box that says yes. But when you look at the longitudinal record, you can see that while he says that his, that the limitations are consistent with his own clinical observations, as Dr. Thompson said, those limitations that Dr. Liu assessed are unexplained by even the more severe findings that Dr. Liu finds, and overall are inconsistent with the longitudinal record, including plaintiff's subjective symptom complaint. Let me ask a question. If a judge were to reverse the LJ on Mr. Reeve's wife's testimony, on Dr. Kim's opinion, and with regard to Mr. Reeve's testimony, reverse or find error on some of the inconsistencies but not all, why should there be an ultimate ruling in favor of the commissioner? If the court were to find error with regard to the wife's statement, Dr. Kim's opinion, and the plaintiff's subjective symptom complaints? Well, with regard to not all of the, you know, obviously not the construction management degree, not the reclining three to four hours, not using the cane, the, you know, ALJ's finding that medical evidence of the record fails to document significant objective findings, and the treatment would have supported, you know, not the medical record, but on the other things, like the trouble concentrating, the compliance with treatment, household chores, work history, gardening, picking up Reeve's wife, working on cars. So if it was a mixed ruling on Mr. Reeve's testimony, but a reversal on the wife's testimony and Dr. Kim's testimony, why should your client prevail? If the court were to find harmful error with regard to Dr. Kim's testimony or Dr. Kim's opinion, I don't think that my client would prevail. I think this court would have to send the case back for further proceedings. Can I ask you one question, because this case has been up and down to the court before. When the district court's, the first district court's findings reject, saying certain inconsistencies could not support the ALJ's discounting of subjective testimony, is that law of the case? Could the second ALJ rely on them again, and they had already been rejected by the district court? Well, the record on remand is considerably broader and considerably different. But those ones that were exactly the same, that were rejected, that were relied on by the first ALJ, reversed by the district court, could the second ALJ rely on those exact same ones again, to the extent that they did? Or is that law of the case? I mean, if there was no new evidence informing on those issues, so, for example, we talked about the degenerative disc disease. I'm talking, for example, about the purported inconsistency between the wife's statements about his ability to concentrate. I think the first district court said, that's not an inconsistency. But then it still shows up in the second ALJ's opinion, saying that's an inconsistency. Why isn't that prohibited by law of the case? You'll have to forgive me, since this issue wasn't briefed. I haven't taken a very, very close look at what the prior district court said were good and bad reasons. I do recall that the prior district court said, like, minor inconsistency alone is insufficient to find that Reeve is not a reliable reporter. And to the extent there are additional... If the district court said, in fact, this is not an inconsistency, could the second ALJ turn around and say it is an inconsistency? I would say, if there's no new evidence informing that question, then the ALJ should not have said that. And then... No, do you have any further questions? No, I was just going to ask, to follow up on your statement, that if we did find error in discounting Dr. Kim's opinion, that you don't think your client could be... Do you mean that if we credited Dr. Kim's opinion, that would mean the claimant was disabled? Oh, no, no. Sorry. I was saying that if the court finds the ALJ... I'm sorry. I was saying that if the court were to find that the ALJ erred in evaluating Dr. Kim's opinion, then the appropriate remedy would be remand for further proceedings consistent with what Mr. Aton has requested. Well, I guess I just want to... I have some questions about that. Excuse me, Mr. Janich, I'm sorry. And I have some questions about that, only because this case has been pending for a long time, and this is already the second time it's been on judicial review. There's been two ALJ evidentiary hearings. What... I guess I'm just wondering, if we did find reversible error, I mean, the functional limitations identified by Dr. Kim and Dr. Liu, which they both appear to agree on, if they were credited, it seems to me under the VE's already testimony, you said that he would be disabled. So I'm not sure what value is really added here to yet another third... yet another remand, and possibly another evidentiary hearing at this point. Well, the question for whether you should credit evidence as true and find a claimant disabled is whether... It's not whether the case has been pending for a long time, it's whether there are other inconsistencies that require resolution. And in this case, I would argue that, particularly as Mr. Janich noted, given the fact that the claimant said he was attending school to transition his career into a more back-friendly position, that that suggests that even the claimant himself believes he is not disabled. And so there are inconsistencies, particularly as well given Dr. Thompson's testimony, medical expert testimony at the hearing, and the inconsistencies in the subjective findings throughout the record, that there are inconsistencies that require resolution on remand, that it is not beyond a shadow of a doubt that the claimant is disabled. What if we affirmed the ALJ's discounting of subjective testimonies, and said, you know, essentially there are no more credibility issues to be resolved, but even under our case law, saying where treating and examining physicians' opinions are based more on objective medical evidence and clinical observations than subjective self-reports, those still need to be credited. And here, if those establish disability, why would we need to remand? For example, Gannon v. Colvin, 763 F. 3rd, 1154. We said, you know, if the treating physician, if the opinion is not more heavily based on the patient's self-reports than on clinical observations, there's no evidentiary basis for rejecting the opinion. Right. So, to get to remedy, then. What I would say is that there are remaining inconsistencies in the medical opinion evidence, including inconsistencies between state agency medical consultants and the medical expert, Dr. Thompson, and Dr. Kim's very brief opinion. And under Dominguez, those are the kinds of inconsistencies that this case, that this court should remand to the administration. The treating physician's opinion, even though they've been a treating physician and have seen the patient over a period of time, just because the written opinion is short, it can be discounted? Off the top of my head, I'm afraid I don't. But there are numerous cases that say that a checkbox opinion, without more, that is a reasonable thing for the ALJ to consider when evaluating a medical opinion. For a treating physician? Even for a treating physician. All right. It's been 7 minutes and 18 seconds over time. So, let's have one minute rebuttal, please, Mr. Janich. I think you're muted. You're muted. You're muted, Mr. Janich. Yes. That was my most eloquent statement of the day, too. We can hear you now. Go ahead, please. Thank you. I know. I want to quickly focus on, Commissioner talks about the evidence that supposedly contradicts the opinions of the two treating examining doctors. One of the things they point to is Dr. Merrifield's evidence, which was from 2018, that's at 1041-42, while failing to note that he also noted numerous significant objective findings that support Reeve's disability claim. There's also an MRI from April 2019, which similarly, excuse me, yeah, April 2019, that also supports the disability claim. And then Ms. Mott was discussing the treatment note from Scott Adams, a physician assistant, from April 2019, which is at 964-65, around then, around there, where he did not find range of motion limitations, but he did find a positive straight leg raise test. He found a positive Faber test for hip joint abnormalities, and a positive Ganselin's test for lumbar and sacroiliac joint abnormalities. So the evidence does not actually contradict the findings of Dr. Liu and Dr. Kim. And back, as a final matter, I mean, I feel a little bit remiss that I haven't argued for an award of benefits here. I believe that Judge Sun has correct that when, if you credit the medical opinions of Dr. Liu and Dr. Kim, and the treating physical therapist as well, Ms. Hiller, it can only lead to one possible outcome, which is the award of benefits, regardless of the testimony. And so that's what I think it boils down to on type of relief is, does that testimonial issue create serious doubt? I'm sorry. You have to be convinced that there's no doubt as to disability, per Leon versus Barry Hill, 9th Circuit 2017. And based on the inconsistencies here, I don't find that's been met. I don't think this is. You have never requested this relief in your opening brief, anywhere. In your appeal, you've never raised it before, so that would not. You concede yourself that there's some pretty serious inconsistencies here. The construction management degree would, as I agree with the government, could undermine that Mr. Reeve believes that he's disabled, because he said this would help him to transition to a back-friendly occupation. It also undermines his credibility overall, and also undermines his specific testimony that he can't concentrate. I mean, whether he's doing school online or not, it does require concentration. So I believe that there's sufficient inconsistencies here, that this is not one of the rare exceptions, that there is no doubt as to disability. I'm not going to argue that point with you, because I did concede it in both of my briefs. But I will say, once again, that the evidence on it is not clear, and I don't believe that the evidence, once it's properly developed and properly analyzed, will actually support serious doubt. But that has not been done yet. Thank you. I have nothing further. All right. Thank you. I think you've been over two minutes and 33 seconds. So this case is also submitted. Thank you to both counsel for very helpful arguments. We're going to take a five-minute break before we call the last case. Thank you. All rise.
judges: Gilman, KOH, SUNG